## THE CENTRAL RAILROAD COMPANY OF NEW JERSEY *vs.* LEVI HETFIELD, JR.

1. Where the charter of a railroad company gives power to take lands for the purposes of their road, and to take possession of and hold the lands with the consent of the owner, or without consent, upon payment or tender of damages, if no particular mode of consent is prescribed by the charter, it is not necessary to have the consent in writing: a verbal consent is sufficient.

2. If the company take possession of the land, and use it without the consent of the owner or payment of damages, they are liable to an action of trespass; but if a trespass is committed, it is against the owner of the land at the time it is taken, and an action of trespass will not lie in favor of a subsequent owner.

3. If an action of trespass is brought by a subsequent owner, there being no trespass committed against him, the company may prove, under the general issue, that they obtained the consent of the person who owned the land when they took possession of it.

In error to Essex Circuit.

Levi Hetfield, Jr., brought an action of trespass against the Central Railroad Company of New Jersey for using the street in front of his premises for the purpose of their

railroad track. The plaintiff claimed title to the centre of the street, and upon the half of the street claimed one track of the railroad was located.

The plea was not guilty, with notice of special matter. The notice was as follows:

Please take notice that, under the plea of the general issue, the defendant will give in evidence that the Elizabethtown and Somerville Railroad Company were duly incorporated under and by virtue of a law of the State of New Jersey entitled, " An act to incorporate the Elizabethtown and Somerville Railroad Company," passed February ninth, eighteen hundred and thirty-one, and that the said company was duly organized under the said act of incorporation; and that the said company, by the said act, were authorized to construct a railroad from Somerville to Elizabethtown, passing, as near as practicable, through Plainfield, said road not being more than sixty-six feet wide, with as many sets of tracks as the said company might deem necessary; and when the route of the said road should be surveyed, and the survey thereof deposited in the office of the secretary of state, then it was, by the said act, made lawful for the said company to enter upon, take possession of, hold, have, use, occupy, and excavate such lands, and erect embankments and all other works necessary to lay rails, and do all other things which should be suitable or necessary for the completion or repair of the said road, provided that the payment, or tender of the payment, of all damages for the occupation of the lands through which the said railroad should be so laid out be made before the company or their agents enter upon or break ground on the premises; that the route of the said railroad was so located over the grounds where the said supposed trespass took place, said location being made by means of a central line run through a track, or width for track, of sixty-six feet wide, and after the said survey and location was made; and many years prior to the commencement of this suit the said railroad was

constructed on the said lands in question by the said the Elizabethtown and Somerville Railroad Company; and will further prove that the taking and occupation of the said lands, and the damages by reason thereof, were paid and satisfied and settled for at the time of such taking, and that no claim for any damages for the occupation of the said lands has existed since the company so took possession of the same.

And that the Somerville and Easton Railroad Company was incorporation under an act of the legislature of this state entitled, "An act to incorporate the Somerville and Easton Railroad Company," and was duly organized thereunder, and that the said the Somerville and Easton Railroad Company were, by an act entitled, "A supplement to an act entitled an act to incorporate the Somerville and Easton Railroad Company, passed February twenty-sixth, eighteen hundred and forty-seven," duly authorized to purchase the said railroad of the said the Somerville and Elizabethtown Railroad Company, and did so; and the said the Somerville and Easton Railroad Company was, by the act last aforesaid, authorized, on effecting the said purchase, to assume and take the name of the Central Railroad Company of New Jersey, which they did, and are the defendants in this suit, and are invested with all the rights of both the Elizabethtown and Somerville Railroad Company and the Somerville and Easton Railroad Company; and that the said lands where the said supposed trespass took place are now in the lawful use, occupation, and possession of these defendants, and have been in the use, occupation, and possession of the said the Elizabethtown and Somerville Railroad Company and of the said the Somerville and Easton Railroad Company and of these defendants, under and by virtue of the said acts of the legislature of New Jersey aforesaid, for more than twenty years before the commencement of this suit.

The cause was tried at the Essex Circuit before a jury,

Central Railroad Co. v. Hetfield.

On the trial, the plaintiff proved his title by deed from W. C. Ayres and wife, who acquired title by mesne conveyance from Jacob A. Wood, the owner of the premises when the track was laid in 1838, and who owned and remained in possession of the property in question until 1844.

The state of the case shows the following evidence offered and exceptions taken by the defendants.

And thereupon the examination of the witness, James Moore, was proceeded in as follows: the counsel for the defendants asked the witness if he knew whether Jacob A. Wood consented to the location of the railroad through the centre of Third street at the time of the location thereof in October, 1836. To this inquiry the counsel for the plaintiff objected, as calling for irrelevant and unlawful testimony. Thereupon the charter of the Elizabethtown and Somerville Railroad Company, passed February 9th, 1831, was offered in evidence, and the 6th section thereof read by the defendants' counsel; and the said question was again repeated, and objected to by the counsel for the plaintiff; and the said question was overruled by the judge, to which ruling the counsel for the defendants excepted.

The defendants' counsel then offered to prove by the witness that Jacob A. Wood, after the first of September, 1836, and when the Elizabethtown and Somerville Railroad Company located their railroad through the centre of Third street, in Plainfield, and proceeded to lay the same there, consented thereto; to which evidence the counsel for the plaintiff objected, and the judge overruled the same, to which ruling the counsel of the defendants excepted.

The counsel of the defendants then called Zachariah Webster as a witness, and asked him whether the property in Third street, including the lot in question, is damaged or benefited by the railroad being there; to which

question the counsel for the plaintiff objected, and the judge overruled the same, to which ruling the counsel of the defendants excepted.

The counsel for the defendants then put to the witness the following question : Did the owners of the property on Third street and the owners of the property in question acquiesce in the railroad being laid there, when it was first laid ? Which question being objected to, the court overruled the same as calling for immaterial testimony, to which ruling the counsel for the defendants excepted.

The counsel for the defendants then asked the witness thus : Did the owners of property on Third street, and Jacob A. Wood among the number, continue to acquiesce in the railroad being located through Third street, from the time the location was first made to the year 1844, when Wood sold out the property in question? (The counsel of the defendants explaining, at the same time, that the question was put for the purpose of showing the continued acquiescence of the property-owners in the location of the railroad.) This question also being objected to by the plaintiff's counsel, was overruled by the judge, to which ruling the counsel of the defendants excepted ; and upon these, their said several exceptions, the counsel of the defendants prayed that their bill of exceptions might be sealed, and it is sealed accordingly.

(It was admitted by the plaintiff, by his counsel, that the defendants, the Central Railroad Company, are purchasers of the Elizabethtown and Somerville Railroad Company, so far as they are authorized to be such by law, and the several acts of the legislature passed in relation to the said companies, respectively, were considered as evidence in the case.)

A verdict was rendered for the plaintiff, and the cause was removed to this court by writ of error.

Argued before the Chief Justice, and Justices OGDEN and VREDENBURGH.

*Frelinghuysen* and *Bradley*, for plaintiffs in error.

*C. Parker*, for defendant.

VREDENBURGH, J. This is an action in trespass for entering, on the first of May, 1856, upon the plaintiff's land, and laying a railroad track on it. The plea is, not guilty, with notice that the Elizabeth and Somerville Railroad Company was incorporated on the 9th of February, 1831, and were thereby authorized to construct their road with as many sets of tracks as they might deem necessary ; and that, when the route should be surveyed, and the survey deposited in the office of the secretary of state, it would be lawful for them to enter upon, take possession of, hold, have, use, and occupy said lands, and do all things necessary regarding said road, provided payment or tender of all damages be made before entry ; that the route of said road was located over the *locus in quo* sixty-six feet wide, and that the road, many years before the suit, was constructed thereon, and that the damages were paid and satisfied at the taking, and that the Somerville and Easton Railroad Company was incorporated, and, by act passed February 26th, 1847, were authorized to purchase the first-named road, and so did, and thereby were invested with all the rights of the Elizabeth and Somerville Railroad Company, and that the said company had had possession over twenty years.

It is not questioned but that the Somerville and Easton company succeeded to and held all the rights in this regard that the Somerville and Elizabethtown company had. The rights of the parties, therefore, are under the old, and not under the new constitution.

What were the rights, therefore, of the Elizabethtown and Somerville Railroad Company ? These are prescribed by their charter, (*Pamphlet Laws*, 1831, *pp.* 81, 86.) The power granted to them is to construct a railroad between the *termini*, passing as near as practicable through Plain-

field, not exceeding sixty-six feet wide, with as many rails as they may deem necessary.

These are the powers granted. It is not complained that this road is not between the *termini,* or as near Plainfield as practicable, nor exceeding sixty-six feet wide, nor with more tracks than they deem necessary. The complaint is not that the company have exceeded their powers. The legislature, under the old constitution, by virtue of their power of eminent domain, would have had a right to have constructed this road themselves without compensation, in the same way and for the same reason that they would have had the power to lay a tax. This power they delegated to the railroad company, with power, when the route was determined on and the survey thereof deposited in the office of the secretary of state, to take possession of and hold said lands with the consent of the owner, or without consent, upon tender of damages. It appears, by the case, that the road was worked and built in 1837, and that one Wood was then the owner, who, in 1844, sold to the plaintiff. On the trial, the defendants offered to prove that they had the parol consent of Wood to work and build their road where they did.

This evidence was overruled by the court, upon the ground that the consent should have been in writing. But the statute does not require the consent to be in writing. The statute of frauds does not apply. That only applies where there is no other statute regulating the matter. This matter is regulated by its own special statute, which is governed by its own terms. Nor does the reason of the statute of frauds apply. The legislature had the power to take without consent or compensation, but saw fit to prescribe that its agents should either get consent or pay. The evidence of either this payment or consent is not prescribed, and in either case may be such as satisfied the tribunal to pass upon it. The misapprehension of the plaintiff is that the defendants get title by the payment or consent, whereas they get title by virtue of the act, and

Central Railroad Co. v. Hetfield.

the determination of the agents of the state to appropriate it, and the lodging the survey in the office of the secretary of state.

But the defendants cannot lawfully seize the land before payment or consent, and if they do so they are liable as trespassers. But the land is nevertheless condemned, and the right to use it vested in the agents of the state as long as the public use it; and the remedy of the owners is an action of trespass. I am not now speaking of the new, but the old constitution.

This consent, therefore, spoken of in the charter of 1831, has no analogy to where a person claims right to hold land by leave and license. It is the case where a person in possession gives consent to the person entitled to take possession, and it may be proved directly by verbal consent or inferred from long acquiescence.

There is another corollary which follows from the same principles. Where land is thus seized unlawfully, the whole injury is done at the first seizure. The state holds the land; the owner is entitled to its full value. It is seized, if seized at all, for the whole period it is to serve as a public user. The whole injury is to the person who is owner at the first seizure. If a person buys afterward he buys subject to the public user, and all his rights are subject thereto. There can be no subsequent trespass as against him, and the defendant can defend himself under the general issue without notice. Lands in such cases are seized by the public for great public trusts. This very road has gone on stretching out its arms until it binds together by ties infinitely stronger than its iron bands, the extremities of the continent—in peace, advancing all the highest principles of civilization, and in times of war liable, like other property, and by the same laws as its battle fields, to be seized by the government—one of the mightiest elements of national power either for defence or aggression. It never could be tolerated that any private owner could thus, after consent given, sever the

sinews of the national strength and lay such immense interests prostrate at his feet. He is entitled to his pay, either from the government or its agents. If its agents enter without consent or payment, he is entitled to vindictive as well as real damages in trespass, and the whole damage is by the original seizure and to the original owner. It follows that if the defendants seized this land without payment or consent, they are liable to the person who owned the land at the time of the seizure as for a condemnation, and not to any subsequent owner. The plaintiff's grantor, therefore, if anybody, is the one entitled to damages. The right to these damages has not been, nor could they be (being a mere chose in action) assigned to the plaintiff. So that, whether the defendants took possession originally rightfully or wrongfully, it is manifest that the present plaintiff has no legal cause of action.

Let the judgment below be reversed.

OGDEN, J. This was an action for trespass, brought in 1856, for an unlawful entry upon and occupancy of the half part of a street in the village of Plainfield, in the county of Union, on the line of the route of the Central Railroad Company of New Jersey.

The case before this court shows that the railroad was located and built over the *locus in quo* in 1837 or 1838, and has been so used up to the commencement of this suit; that one Jacob W. Wood owned the property from the first of September, 1836, to the 27th of September, 1844, when he sold it to the present plaintiff. That the street called Third street, upon which the railroad is located and constructed, was an open public highway when the company entered upon it, and was so continued to the present time; and that in purchasing lots facing on the street, the plaintiff, by his deed, took title to the centre line of the street with full, actual knowledge that the ground within the lines of the public highway was occupied by the railroad company. Under such circumstances, the plaintiff

brought an action of trespass against the company for an unlawful entry upon and user of his land lying on the one side of the centre line of Third street.

He proved his title and rested his case; and in defence the company gave in evidence the charter under which the railroad was constructed, passed on the 9th of February, 1831, and also the survey and location of the route of the same, made and filed under the provisions of the 6th section of the act of incorporation, for the purpose of showing that they are not *trespassers*, but were in possession of the land by authority of law for the purpose of maintaining and working a railroad.

The section referred to in the charter provides that when the route shall have been determined upon and a survey of the same deposited with the secretary of state, it should be lawful for the company to enter upon, take possession of, hold, have, use, occupy, and excavate any lands covered by it, and construct their road thereon, subject to such compensation as is thereinafter provided. If this was the whole section, under the decision of this court, as reported in 4 *Zab.* 587, there would be no doubt of the right of the company to enter upon the land and construct a railroad before making compensation. But a proviso was introduced in it, requiring that, before the company should enter or break ground in the premises, the payment or tender of payment should be made of all damages for the occupancy of lands through which the railroad may be laid out, unless the consent of the owners of the land be first had and obtained.

The company, in further support of their justification or defence, offered to prove, by parol testimony, the consent of Mr. Wood, being the owner of the land when the road was projected and constructed, that the railroad company might take possession and occupy at the time when the road was constructed; and also offered to prove his acquiescence in such use of it during the whole time of his

ownership. These offers were objected to by the counsel for the plaintiff, and were overruled by the court.

I think that the offers were both material and competent. The testimony is not within the prohibitions of the statute of frauds. If the legislature had intended that the *only* evidence of a consent should be a *writing signed by the landowner*, they would have said so in direct language. No such kind of evidence is required by the charter, which I think ought to regulate us in this case; and the way was open at the trial for the defendants to satisfy the jury, if they could do so by oral proofs, that the company entered upon the land, and constructed the railroad and enjoyed the possession thereof for years, by the expressed consent and continued acquiescence of the person who then owned the land during his ownership.

This is a suit in trespass. Unlawful entry and unlawful acts after such entry are the gist of the action.

If the entry and occupation complained of will support trespass, an action of ejectment could also be maintained.

The public have acquired valuable rights of travel upon the line of the railroad. Mails are carried over it, immense quantities of produce, fuel, and other necessaries of life are hourly transported over it, and those public rights ought not to be put in peril by such a construction being put upon the charter as might jeopardize the use of a great public thoroughfare, when the land-owner who feels injured can have another adequate mode of redress. If the plaintiff is defeated in this suit, he can prosecute the company in action *ex contractu* for such compensation as he may be entitled to recover.

The company are trustees, and the public are *cestuis que trust* in a great highway constructed more than twenty years ago, under a power given by the legislature in the exercise of their right of eminent domain.

Expensive investments have been made by citizens, and valuable improvements have grown up along the line of the railroad since it has been in operation. It would

be contrary to public policy, that after the inhabitants of the state have entered upon the enjoyment of the benefits contemplated to result from the construction of a great public improvement authorized by the legislature, that the company who have received and acted under the charter, after a part performance of their contract with the state, should have it within their power, by obstinately withholding compensation from a few land-holders, to permit a great line of travel to be interrupted, and its continuity, perhaps, seriously impaired.

There was error in overruling the testimony offered by the defendants, and the judgment should be reversed, and a *venire de novo* be awarded.

The CHIEF JUSTICE (dissenting.) This was an action of trespass by Hetfield against the railroad company, for breaking and entering his close in Plainfield, and building thereon a railroad, in May, 1856, and ejecting the plaintiff from his close, and keeping him out of possession.

The plea was the general issue, and a notice setting out in detail that the road was, many years before, built under authority of the charter of the Elizabethtown and Somerville Railroad Company, to whose rights the defendants have lawfully succeeded. The notice does not claim that any deed was given for the land or right of way by the then landowner, or any award made under the charter, but states that the land and damages were settled and paid for at the time of the taking of the land.

At the trial, the plaintiff proved his title to the *locus in quo*, which was a part of the public street in front of his lot, called Third street, in Plainfield, and that the railroad is located in that street and across the land included in his deed of conveyance.

The bill of exceptions shows no evidence, offered by the plaintiff or defendant, of any alteration of the railroad track after it was first laid. The map which was put in

by the plaintiff showed that the plaintiff's lot extended to the middle of the street, and two railroad tracks, one of which was between the centre of the street and the plaintiff's boundary on the street, and the other upon the opposite side of the centre line of the street. No evidence in the cause shows any more laying of track after October, 1838, when the road was extended from Plainfield to Somerville, it having been completed to Plainfield in 1837.

The defendants showed the survey of the road, by which it appeared that it was located through Third street, the centre of the street. The engineer who made the survey also testified to that fact.

As the case stands upon the bill of exceptions, it must be assumed that the trespass relied upon to sustain the case was the use and occupation of the road as it was constructed in 1838. At that time Jacob A. Wood was the owner of lot 9, which is the *locus in quo*. The plaintiff acquired his title in 1851, from W. C. Ayres and wife, who acquired title by mesne conveyances from Jacob A. Wood.

Several bills of exception were sealed at the trial.

The defence offered to show that Jacob A. Wood consented to the location of the railroad through the centre of Third street, at the time of the location thereof, in October, 1836, and also that, after the location, and after the first of September, 1836, the said Wood consented to the laying of the road there; also that Wood acquiesced in the railroad being laid through Third street when it was first laid; also that Wood continued to acquiesce in the railroad being laid there from the time it was first laid until 1844, when he sold the property in question.

All these offers were overruled by the court, and bills of exception sealed. These bills present for determination two points—

1. Was the evidence offered competent for the purpose of showing that the continuance of the railroad track over

the *locus in quo*, and its continued use by defendants, were not tortious as against the plaintiff?

2. Was it competent for the purpose of showing a right of possession of the *locus in quo* under the charter of the defendants?

As to the first point, the question is not whether the evidence was competent in answer to the action, but whether, under the issue made by the pleadings, it could be received.

The pleas were not guilty, and a permanent right of possession acquired by payment of the value of the land and damages, according to the provisions of the charter.

Under the plea of not guilty, any evidence showing that no trespass had been committed, that is, no entry had been made upon the plaintiff's land by the defendants, was competent. All matters admitting the trespass in fact to have been committed must be specially pleaded. *Bac. Ab., title " Trespass," 1, Gen. Issue; Co. Lit.* 282, *b ; Badkin* v. *Powell, Cowp.* 478 ; *Chit. on Pl.* 493, 539 ; 2 *Camp.* 378–9 ; *Rawson* v. *Morse,* 4 *Pick.* 127 ; *Waters* v. *Lilley,* 4 *Pick.* 147 ; 1 *Phillips' Ev.* 134, 3*d ed. ;* 3 *Stark. Ev.* 1462 ; 2 *Saund. Pl. and Ev., Leave and License ; Bennett* v. *Allcott,* 2 *T. R.* 166.

If the defendants had offered to show that they laid the track by permission of the plaintiff, the evidence would not have been admissible under the general issue. The license of the former owner could not, for the same reason, be admitted under the issue. It admitted the apparent trespass upon the plaintiff's land, but sought to justify it by evidence of authority to do the act, or continue the railroad as it was built.

I was at first inclined to think that the evidence was admissible upon the ground that as the evidence showed that the original entry was lawful, the defendants could not be treated as trespassers without a notice from the plaintiff of its revocation ; but upon further reflection, I am satisfied this view of the case cannot be supported.

The same reason that requires the plea of license when given by the plaintiff requires it when given by a former owner of the land under whom the plaintiff claims.

Lord Abinger, in *Wallis* v. *Harrison*, 4 *Mees. & Wel.* 543, held that in such a case a party who does that which is *prima facie* a trespass ought to make his excuse good by averring want of notice of a transfer of the property by his licensor. That would put in issue what is a material part of the justification. The defendants were *prima facie* trespassers; they were bound to show by special plea a right to be there, doing the acts complained of. I am not willing to go the length of that case, and hold that the conveyance of the land by Wood so completely revoked the license as to make the defendants trespassers. It is true, as Lord Abinger says, that a person who does an act upon land not his own is bound to know the true owner. His ignorance of that is no excuse. If A gives B permission to hunt upon his land, and then conveys to C, and A afterwards continues to hunt as before, it is no excuse for B to say that he did not know of the transfer when sued for trespass by C. The license conveys no interest in the land, nor does it charge or encumber it. But where B, by A's permission, erects a temporary building upon the land, or a railway, it would be hard, at the instant the title to the land passed by deed, to convert the lawful occupation into a trespass. Where an occupant of land is sued in trespass by the lawful owner, he must avoid the trespass by showing his authority to be there, either from the present or a former owner of the land. This he must do by special plea. His defence is license, not title. By this defence he can claim no right to remain; his right is to remove upon notice of revocation, without being treated as a trespasser if he does so. A mere license to enter upon the land, uncoupled with an interest, may be revoked at the will of the party by whom it was given.

A right to come and remain for an indefinite time on

the land of another can be granted only by deed, and a parol license to do so is revocable at any time, although money be paid for it, and even if money has been expended upon the faith of it in erecting buildings or any other permanent structures or improvements. *Wood* v. *Leadbitter*, 13 *Mees. & Wel.* 858; *Miller* v. *The Auburn and Syracuse Railroad Company*, 6 *Hill* 64; *Cook* v. *Stearns*, 11 *Mass.* 533; *Ruggles* v. *Lescure*, 24 *Pick.* 190; *Prince* v. *Case*, 10 *Conn.* 375; 11 *Metcalf* 251, *Stevens* v. *Stevens.*

I am of opinion that the evidence was not competent, under the pleadings, to support the defences of license.

As to the second point.

II. Was it competent to show a right of possession under the charter?

This aspect of the case is not embarrassed by any question of pleading.

The principles already discussed are conclusive as to this point in one view of it. The defendants must maintain themselves not upon the common law, but by virtue of some peculiar provision of their charter in derogation of it. By the charter, it was provided that when the survey of the road should be deposited in the office of the secretary of state, it should be lawful for the said company to enter upon, take possession of, have, hold, use, occupy, and excavate such lands, and erect embankments and all other works necessary to lay rails, and to do all other things which should be suitable or necessary for the completion or repair of the said road; provided that the payment, or tender of payment, of all damages for the occupation of the lands through which the said railroad should be so laid out, be made before the company or their agents enter upon or break ground on the premises, except for the purpose of surveying and laying out the said road or roads, unless the consent of the owner or owners of such lands be first had and obtained.

The question to be considered on this part of the case is not as to what power the legislature might have granted

to the corporation, untrammeled as they then were by constitutional restrictions, but what did they grant. It is certain that the power granted was not co-extensive with the power of the state to take private property for public uses. Keeping in view this fact, it is obvious that the object of these provisions could not have been to vest in the company the permanent title or possession of the land needed for the railway; both the modes mentioned are inappropriate for the purpose.

The section gives to the corporation the power, which otherwise as a corporation they would not have had, to do all things necessary for making and repairing the road, entry upon embankments and excavation of lands included. The proviso was intended only to limit the power previously conferred, except as to preliminary surveys, to cases where payment, or tender of payment, for lands and damages had been made or the consent of the land-holder had been given. Its office was to limit the exercise of the conferred powers to certain cases, not to declare the mode in which title should be acquired or the powers exercised.

The words of the proviso require not that payment, or tender of payment, shall be made, or consent be given, before the title to the land or the right of permanent possession for railroad purposes shall pass to the company, but before they shall enter or break ground on the premises. It is a limitation on the right to take possession, not a mode described of acquiring title. The proviso declares the company shall not take possession *before* consent or payment, but *after*. This is made very clear by the next section; for as the last had not prescribed any mode by which the damages were to be ascertained or the consent given, this proceeds to point out the modes, which are, an agreement with the owner of the land for the use or purchase thereof, or an ascertainment by commissioners of the value of the land and damages, who are to be appointed in a particular mode prescribed by the act.

The report, with a description of the land, is to be filed in the clerk's office of the county, and the act declares that this report shall at all times be considered as plenary evidence *of the right of the company to have, hold, use, occupy, possess,* and enjoy the said lands.

When the legislature uses terms of known signification in the law it is presumed they use them in that sense. The provisions of the statute of frauds as to the conveyance of interests in lands will not be held to be repealed by implication, unless the act can have no other sensible construction.

What an agreement for the use of land permanently, or the purchase thereof, is, the act does not define; it leaves that to the general law of the state. In the absence of all direction to the contrary, it must be such an agreement as would bind the owner.

If the act had used the word *deed* it would have been no more definite than it now is. It says, if the land cannot be purchased, commissioners must be appointed, and the title acquired in that way. If it *can* be purchased, it *must* be. A legal purchase of land can be made by deed only.

Again, by the last section, entry cannot be made to build the road until the damages have been paid or tendered. What damages? Manifestly not such as the company may offer, although they may be abundant, but such as may be found by the commissioners. Again, what consent? The answer is obvious: such consent as is provided for in the next section, a purchase of the lands.

It is obvious that neither of the sections can be executed without the other. The company may take possession by consent or payment of the damages. Nobody disputes but that, if not agreed to, the damages to be tendered must be ascertained by commissioners under the next section. No mode in which consent shall be given is prescribed by the first section, but is by the

second.    How, then, can it be said the act is silent as to the mode of assent?    That is untrue in fact.

The consent spoken of is not such an one as would bar an action of trespass, but such as would convey the title or right of possession.    No legislative provision was necessary to give force to a verbal license, that would protect the entry on common law principles, as we have already seen.

The case of *Den* v. *The Morris Canal Company*, 4 *Zab.* 587, relied upon by the defendants' counsel, furnishes no guide to the construction of this act.    By the terms of that charter, three modes of obtaining compensation for the land taken and damages sustained were provided.

1. By agreement with the land-owner.

2. By action against the companies, after they have taken the land and done the damage, to recover, not for a trespass, but a compensation for the injury sustained.    *Kough* v. *Darcey*, 6 *Halst.* 241.

3. By assessment, award, and payment.    The act, on its face, authorized an entry upon and taking of the land, subject to such compensation to be made therefor as was thereinafter directed.    In the case in 4 *Zab.*, just cited, it was held that this referred to all the modes of obtaining compensation, as well by action as the other modes.

The remedy by action could not be had until after the injury done.

This act clearly provides that the compensation shall precede the injury.

I am not able to perceive any reason why the requirements of the statute of frauds should not extend to a case of purchase mentioned in this act as well as to all other purchases.

The defendants cannot avail themselves of the equitable doctrine of acquiescence as a defence in this case, as argued by their counsel, or repose upon that of part performance of a contract to convey.    We are in a court of

law, and the defendant must show a legal title or right of possession.

The plaintiff has not stood by and seen the defendants erect valuable buildings under a mistake as to the boundary line between them, or even of their legal rights to the land, without making a claim, all of which have been held in equity to estop the party from asserting a right which he concealed when he was bound to speak. It is a case where the defendants have chosen to rely upon a parol settlement or consent insufficient for their protection; they were bound to know the law. There is no element of fraud in the case out of which to frame an equitable or legal estoppel.

The case of Ludlow v. The New York and Harlem Railroad Company, relied upon by defendants, is not at all analogous to this case; that was a case where it was held that a forfeiture of a deed had been waived by a waiver of performance of a condition to build a fence within a limited time.

The evidence offered was not competent in any aspect of the case, was properly overruled, and the judgment ought to be affirmed.

REVERSED, 5 *Dutch.* 571. *Cited in Hinchman* v. *Paterson Horse R. R. Co.,* 2 *C. E. Gr.* 78; *J. C. & B. R. Co.* v. *J. C. & H. H. R. Co.,* 5 *C. E. Gr.* 67; *State* v. *Laverack,* 5 *Vr.* 207; *Morris and Essex R. R. Co.* v. *Hudson Tunnel R. R. Co.,* 10 *C. E. Gr.* 388.